UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PARADIGM BIODEVICES, INC.,  *
                            *
        Plaintiff,          *
                            *
    v.                      *   Civil Action No. 10-11915-JLT
                            *
VISCOGLIOSI BROTHERS, LLC, et al.,  *
                            *
        Defendants.         *

MEMORANDUM

May 11, 2011

TAURO, J.

I.  Introduction

In this action, Paradigm BioDevices, Inc. ("Plaintiff") alleges fraudulent and tortious behavior by Defendants. Defendants are comprised of two general groups: Viscogliosi Brothers, LLC; Viscogliosi & Company, LLC; Centinel Spine, Inc.; John J. Viscogliosi; Anthony Viscogliosi (collectively, "the Group Defendants") and Paradigm Spine, LLC ("Paradigm Spine"). Presently at issue are the Group Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) [#27], the Group Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#29], Paradigm Spine's Amended Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) [#32], and Paradigm Spine's Amended Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [#33].

For the following reasons, the Group Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) [#27] is ALLOWED and Paradigm Spine's Amended Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) [#32] is ALLOWED.

Accordingly, the Group Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#29] is MOOT and Paradigm Spine's Amended Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [#33] is MOOT.

II. Background[1]

A. The Distribution Agreement

Plaintiff is a medical device manufacturer and distributor specializing in advanced spinal medicine and science.[2] On or about October 27, 2004, Paradigm Spine and Surgicraft, Ltd. ("Surgicraft"), a medical device manufacturer based in the United Kingdom, entered into an exclusive distribution agreement, which was amended and restated by further written contract dated March 7, 2005 and which Surgicraft executed on March 10, 2005 (the "Distribution Agreement").[3] Pursuant to the Distribution Agreement, Plaintiff sold Surgicraft products to hospitals and medical professionals throughout the United States.[4] One of Surgicraft's devices that Plaintiff was especially successful in marketing was a mechanical spinal fixation system known as "STALIF."[5]

---

[1] Because the issues analyzed here arise in the context of two motions to dismiss for lack of personal jurisdiction, this court presents the facts as they are related in Plaintiff's Complaint. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009) ("On a motion to dismiss for want of personal jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Mass. Sch. of Law at Andover, Inc. v. Amer. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998))).

[2] Compl. ¶ 19 [#1].

[3] Compl. ¶ 20 [#1].

[4] Compl. ¶ 21 [#1].

[5] Compl. ¶ 21 [#1].

Because Surgicraft expressed a desire to find a buyer for its company as soon as possible, Plaintiff and Surgicraft agreed, among other things, that Plaintiff would be entitled to a lump-sum payment if Surgicraft was acquired by a company that then terminated the Distribution Agreement (the "Change of Control Payment").[6]

B.  The Trademark Litigation

Viscogliosi Brothers, LLC ("Viscogliosi Bros.") is a private equity and merchant banking firm focused on the medical device field and, more particularly, musculoskeletal and orthpedic technology.[7] In 2004, Viscogliosi Bros. formed a portfolio company called Spine Motion, LLC, which was renamed Paradigm Spine in 2005.[8]

On January 24, 2007, Plaintiff filed an action in this district[9] against Paradigm Spine, asserting claims for trademark infringement, false designation of origin, and unfair competition (the "Trademark Action").[10] Although the Trademark Action was settled and the case dismissed on January 16, 2008, Defendants obtained information through the discovery process in that action about Plaintiff's sources of revenue, including information about Plaintiff's lucrative Distribution Agreement with Surgicraft.[11]

---

[6] Compl. ¶ 22 [#1].

[7] Compl. ¶ 23 [#1].

[8] Compl. ¶ 24 [#1].

[9] The case was before Judge Woodlock. See Paradigm BioDevices, Inc. v. Paradigm Spine, LLC, No. 07-10127-DPW (D. Mass. 2007).

[10] Compl. ¶ 25 [#1].

[11] Compl. ¶ 26 [#1].

3

C.     Alleged Breach of Distribution Agreement

Defendants then became interested in acquiring Surgicraft.[12] In February 2008, John Viscogliosi ("John") and Anthony Viscogliosi ("Anthony"), principals of Viscogliosi Bros., decided to form a new company that would offer to buy the entire issued share of Surgicraft.[13] On or about February 27, 2008, John met with Surgicraft's owner to discuss John and Anthony's plan to acquire Surgicraft.[14] During that meeting, John and Anthony understood that Plaintiff would be entitled to compensation upon the termination of the Distribution Agreement, and they discussed with Surgicraft's owner how Plaintiff would be compensated.[15]

Surgicraft did not inform Plaintiff that Defendants had expressed an interest in acquiring Surgicraft.[16] Indeed, it was only through the apparent inadvertence of Surgicraft's counsel that Plaintiff learned of Defendants' planned acquisition of Surgicraft.[17] On March 27, 2008, after Plaintiff confronted Surgicraft about Defendants' involvement, Surgicraft denied that a deal was imminent but reiterated its intent that Plaintiff would receive the Change of Control Payment should any acquisition occur.[18] By late spring and summer of 2008, however, Surgicraft denied

---

[12] Compl. ¶ 27 [#1].

[13] Compl. ¶¶ 2, 6, 7, 28 [#1].

[14] Compl. ¶ 29 [#1].

[15] Compl. ¶ 30 [#1].

[16] Compl. ¶ 31 [#1].

[17] Compl. ¶ 32 [#1] ("In March 2008, while [Plaintiff] and Surgicraft were negotiating terms for a new distribution agreement, Surgicraft's counsel provided [Plaintiff] with a draft agreement that contained a mark identifying the document file name, in part, as 'Acquisition by Viscogliosi.'").

[18] Compl. ¶ 33 [#1].

4

that the Change of Control Payment would be due to Plaintiff.[19]

On or about August 15, 2008, Defendants acquired all shares of Surgicraft through Centinel Spine, Inc. ("Centinel"), which Viscogliosi Bros. and John and Anthony had created.[20] As a result of that acquisition, Surgicraft became a wholly owned subsidiary of Centinel.[21]

In October 2008, Defendants caused Surgicraft to terminate the Distribution Agreement, effective December 15, 2008.[22] Defendants also induced Surgicraft to refuse to make the Change of Control Payment to Plaintiff.[23]

D. The UK Litigation

While the Parties disputed Plaintiff's entitlement to the Change of Control Payment, Defendants, through Surgicraft, sought a declaration in the High Court of Justice Chancery Division in the United Kingdom that Plaintiff was not entitled to the Change of Control Payment (the "UK Litigation").[24] Plaintiff filed counterclaims against Surgicraft, seeking payment of the Change of Control Payment.[25] Surgicraft claimed that it never intended for Plaintiff to be compensated upon a change of control of Surgicraft.[26]

---

[19] Compl. ¶ 34 [#1].

[20] Compl. ¶ 35 [#1].

[21] Compl. ¶ 35 [#1]. Plaintiffs allege that Surgicraft did not receive adequate consideration from Centinel for the sale of its business. Compl. ¶ 40 [#1].

[22] Compl. ¶ 45 [#1].

[23] Compl. ¶ 47 [#1].

[24] Compl. ¶ 48 [#1].

[25] Compl. ¶ 49 [#1].

[26] Compl. ¶ 50 [#1].

After a full trial, the High Court ruled that the evidence demonstrated that at the time of the formation of the Distribution Agreement, Surgicraft intended that Plaintiff would receive the Change of Control Payment and that portions of Surgicraft's purported evidence to the contrary was "fanciful where it [was] not untruthful."[27]

On July 29, 2010, the High Court entered an interim judgment in favor of Plaintiff against Surgicraft in the amount of 10 million dollars.[28] On or about August 13, 2010, Surgicraft defaulted on this interim judgment.[29] On November 1, 2010, further proceedings were conducted in the UK Litigation to determine the exact amount of Plaintiff's damages.[30]

E. This Litigation

Plaintiff asserts four counts against Defendants in this litigation: tortious interference with contractual relations; fraudulent transfer; an action for piercing the corporate veil against John and Anthony; and a violation of Massachusetts General Laws chapter 93A.[31]

F. Allegations that Allegedly Form the Basis of Personal Jurisdiction over Defendants

In addition to the facts above, Plaintiff alleges the following facts to support the exercise of personal jurisdiction over Defendants:

---

[27] Compl. ¶ 51 [#1] (quoting Approved Judgment dated May 26, 2010, in Surgicraft Ltd. v. Paradigm BioDevices, Inc., High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08C02874).

[28] Compl. ¶ 52 [#1].

[29] Compl. ¶ 53 [#1].

[30] Compl. ¶ 54 [#1]. Plaintiff expects these damages to exceed fourteen million dollars. Compl. ¶ 54 [#1].

[31] Compl., 10–13 [#1].

Viscogliosi Bros. is a New York limited liability company that has a principal place of business in New York.[32] Viscogliosi & Company, LLC ("Viscogliosi & Co.") is a Delaware limited liability company that has a principal place of business in New York.[33] Centinel is a Delaware corporation that has a principal place of business in New York,[34] and John and Anthony are residents of the state of New York.[35]

The websites of Viscogliosi Bros., Centinel, and Paradigm Spine provide promotional information concerning their products and services and invite visitors, including residents of Massachusetts, to send emails directly to Defendants.[36]

In October 2005 and January 2007, Marc R. Viscogliosi ("Marc")[37] met with five venture capital firms in the Boston, Massachusetts area and distributed promotional information about Paradigm Spine to them.[38] Anthony attended two of those meetings.[39] In December 2005, Marc traveled to Boston for a follow-up visit with one of those firms.[40]

In 2006, Paradigm Spine contacted three Massachusetts doctors to inquire if they would

---

[32] Compl. ¶ 2 [#1].

[33] Compl. ¶ 3 [#1].

[34] Compl. ¶ 5 [#1].

[35] Compl. ¶¶ 6, 7 [#1].

[36] Compl. ¶ 10 [#1].

[37] Marc is not a party to this action.

[38] Compl. ¶ 11 [#1].

[39] Compl. ¶ 11 [#1].

[40] Compl. ¶ 11 [#1].

be interested in hosting clinical trials for Paradigm Spine products.[41]

On or about August 1, 2008, John and Anthony, "on behalf of . . . Defendants," met with Plaintiff's representatives in Boston, Massachusetts to discuss issues relating to these charges.[42]

On August 26, 2008, an executive at Viscogliosi & Co. solicited, via email, a doctor at The Boston Spine Group ("BSG"), which is located in Newton, Massachusetts and which is a customer of Plaintiff, "to explore a business relationship.[43]

Centinel provides products and services to two doctors at Partners Healthcare in Boston, Massachusetts.[44]

III. Discussion

  A. Personal Jurisdiction Standard

A plaintiff "bears the burden of persuading [a] court that jurisdiction exists."[45] A plaintiff "'may not rely on unsupported allegations in [the] pleadings, but [is] obliged to adduce evidence of specific facts' sufficient to justify the exercise of jurisdiction over the named defendants, including evidence outside the complaint."[46]

---

[41] Compl. ¶ 12 [#1].

[42] Compl. ¶ 13 [#1].

[43] Compl. ¶ 14 [#1].

[44] Compl. ¶ 15 [#1].

[45] Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Mass. Sch. of Law, 142 F.3d at 34).

[46] Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 208 (D. Mass. 2010) (Tauro, J.) (quoting Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)).

Personal jurisdiction exists if a federal court may exercise authority over a defendant on the basis of either specific or general jurisdiction.[47] To establish specific jurisdiction, a plaintiff must show both that the Massachusetts long-arm statute[48] grants jurisdiction over the defendant and that "'the exercise of jurisdiction under the statute is consistent with the [United States C]onstitution.'"[49] Specific jurisdiction exists only if "'the cause of action arises directly out of, or relates to, the defendant's forum-based contracts.'"[50] To establish specific personal jurisdiction, a

---

[47] Brown Rudnick Berlack Israels LLP v. Brooks, 311 F. Supp. 2d 131, 132 (D. Mass. 2004) (Tauro, J.) (quoting Mass. Sch. of Law, 142 F.3d at 34).

[48] G.L. ch. 223A, § 3.  The statute provides, in relevant part:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
(a) transacting any business in this commonwealth;
(b) contracting to supply services or things in this commonwealth;
(c) causing tortious injury by an act or omission in this commonwealth;
(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .
Id.

[49] 311 F. Supp. 2d at 133 (alteration in original) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002)); see Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ("[D]ue process requires[, inter alia, that] . . . [a defendant] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))); see also Plunkett v. Valhalla Ins. Servs., Inc., 409 F. Supp. 2d 39, 42 (D. Mass. 2006) ("In order to obtain specific personal jurisdiction in this case, the plaintiff must demonstrate 1) the Massachusetts long-arm statute . . . grants jurisdiction over each defendant and 2) the exercise of jurisdiction comports with Constitutional [sic] Due Process." (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995))); A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc., 742 F. Supp. 39, 42 (D. Mass. 1990) ("[A] plaintiff must show not only that the Long Arm Statute applies but that its application comports with due process." (citing Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990) (Tauro, J.); Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979))).

[50] Cossaboon, 600 F.3d at 31 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)).

9

plaintiff must establish three elements: "relatedness," "purposeful availment," and "reasonableness."[51]

Under the relatedness inquiry, "'causation is central.'"[52] That is, this element "'requires a showing of a material connection.'"[53] In the purposeful availment inquiry, a court must ask whether a defendant, "through its own affirmative conduct, purposefully availed itself of the privilege of conducting activities in Massachusetts such that it could reasonably anticipate being haled into court there."[54] Finally, the reasonableness inquiry focuses on the following factors, known as the "Gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.[55]

Alternatively, general jurisdiction exists if three requirements are met. First, a defendant must have sufficient contacts with the forum state.[56] That is, the defendant must have "'engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the

---

[51] Negron-Torres v. Verizon Commc'ns, 478 F.3d 19, 24 (1st Cir. 2007) (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006)).

[52] Id. at 25 (quoting Harlow v. Children's Hosp., 432 F.3d 50, 62 (1st Cir. 2005)).

[53] Id. (quoting 432 F.3d at 61). Personal jurisdiction does not exist if "the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." Id. (quoting 432 F.3d at 61).

[54] United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992).

[55] Harlow, 432 F.3d at 67 (quoting 960 F.2d at 1088).

[56] Cossaboon, 600 F.3d at 32 (citing 432 F.3d at 57).

suit.'"⁵⁷ Second, these contacts must be purposeful.⁵⁸ Third, "the exercise of jurisdiction must be reasonable under the circumstances."⁵⁹

  B. Viscogliosi Bros.

    1. Specific Jurisdiction

This court does not have specific personal jurisdiction over Viscogliosi Bros. To establish specific jurisdiction over Viscogliosi Bros., Plaintiff asserts that the company maintains a website that provides promotional information and invites emails from visitors, including visitors who are residents of Massachusetts.⁶⁰

The law is clear that "'the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.'"⁶¹ For a court to exert personal jurisdiction over a company on the basis of a website, "'something more is necessary, such as interactive features

---

⁵⁷ Brown Rudnick, 311 F. Supp. 2d at 133 (quoting Daynard, 290 F.3d at 51); see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) (holding that a one-time business trip cannot justify the exercise of general personal jurisdiction).

⁵⁸ 600 F.3d at 32 (citing Harlow, 432 F.3d at 57).

⁵⁹ Id.

⁶⁰ See supra text accompanying note 36.

⁶¹ Cossaboon, 600 F.3d at 35 (quoting McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005)); see also Sportschannel New Eng. Ltd. P'ship v. Fancaster, Inc., No. 09-11884-NG, 2010 U.S. Dist. LEXIS 106272, *19–20 (D. Mass. Oct. 1, 2010) (holding that "a website with the features that are now common, including . . . ability to email the website operators . . . cannot be sufficient to enable the site's owners to be haled into court in any forum in which [the website is] accessible").

which allow the successful online ordering of the defendant's products.'"[62] In making such a determination of personal jurisdiction, "courts have focused on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website."[63]

Here, nothing in the Complaint suggests that Plaintiff's claims arise from or are connected with the website of Viscogliosi Bros. Indeed, other than inviting emails from visitors to the site, Plaintiff does not allege that Viscogliosi Bros. conducted any business through its website. The website is thus insufficient to establish specific personal jurisdiction over Viscogliosi Bros.

    2.    General Jurisdiction

This court may not assert general personal jurisdiction over Viscogliosi Bros. Viscogliosi Bros. is a New York company with a principal place of business in New York.[64] Plaintiff does not allege that Viscogliosi Bros. has an office or employees in Massachusetts nor that it carries on a substantial amount of business in Massachusetts. As discussed above, the website of Viscogliosi Bros. is also insufficient for the purposes of general personal jurisdiction.[65] This court thus cannot subject Viscogliosi Bros. to personal jurisdiction.

C.    Viscogliosi & Co.

---

[62] Cossaboon, 600 F.3d at 35 (quoting McBee, 417 F.3d at 124).

[63] Id. (citing Dagesse v. Plant Hotel N.V., 113 F. Supp. 2d 211, 223 (D.N.H. 2000)); Coastal Video Commc'ns Corp. v. Staywell Corp., 59 F. Supp. 2d 562, 571–72 (E.D. Va. 1999)).

[64] Supra text accompanying note 32.

[65] See supra text accompanying notes 61–63; see also Harlow, 432 F.3d 50 (holding that a hospital's maintenance of an interactive website that was accessible to Maine residents and that allowed Maine residents to contact the hospital for various purposes could not support general personal jurisdiction).

1. Specific Jurisdiction

This court does not have specific personal jurisdiction over Viscogliosi & Co. To establish jurisdiction over Viscogliosi & Co., Plaintiff asserts that the company has had limited contacts with Massachusetts.[66] But Plaintiff's cause of action does not "arise[] directly out of, or relate[] to,"[67] the email from Viscogliosi & Co. to the doctor at BSG. Indeed, that email is not alleged to be related to any of the matters at issue here.

2. General Jurisdiction

Nor may this court assert general personal jurisdiction over Viscogliosi & Co. Viscogliosi & Co. is a Delaware company with its principal place of business in New York.[68] Plaintiff does not allege that Viscogliosi & Co. has an office or employees in Massachusetts or that it conducts business in Massachusetts. The only Massachusetts contact that the Complaint alleges is a single email that Viscogliosi & Co. allegedly sent to a doctor in Newton, Massachusetts to solicit a business relationship. A single email does not constitute "continuous and systematic activity"[69] sufficient to support general personal jurisdiction. This court therefore cannot assert personal jurisdiction over Viscogliosi & Co.

D. Centinel

1. Specific Jurisdiction

---

[66] Specifically, Plaintiff refers to an email from an executive at Viscogliosi & Co. to a doctor at BSG. See supra text accompanying note 43.

[67] Cossaboon, 600 F.3d at 31.

[68] Supra text accompanying note 33.

[69] Brown Rudnick, 311 F. Supp. 2d at 133 (quoting Daynard, 290 F.3d at 51).

13

This court also lacks personal jurisdiction over Centinel. As with Viscogliosi Bros., Plaintiff's attempt to establish jurisdiction over Centinel includes an allegation that the company maintains a website that is accessible in Massachusetts.[70] Plaintiff describes Centinel's website in exactly the same way as it describes the website of Viscogliosi Bros., so the analysis of this fact remains the same as for Viscogliosi Bros.[71] Centinel's website is thus insufficient to establish personal jurisdiction.

2. General Jurisdiction

Nor does this court have general personal jurisdiction over Centinel. Centinel is a Delaware corporation with a principal place of business in New York, and the company has no offices or employees in Massachusetts.[72] Centinel's website cannot support the exercise of general jurisdiction in Massachusetts.[73]

The Group Defendants concede, although Plaintiff does not allege, that Centinel does conduct some business in Massachusetts.[74] The Group Defendants explain that all of Centinel's Massachusetts sales are made through a New Hampshire-based independent distributor.[75] The First Circuit has held that "sales by an independent distributor . . . normally do not count as

---

[70] See supra text accompanying note 36.

[71] See supra text accompanying notes 61–63.

[72] See supra text accompanying note 34.

[73] See supra text accompanying notes 61–63, 70–71.

[74] See Mem. Supp. Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(2), 16 [#28] [hereinafter Group Defs.' 12(b)(2) Mem.].

[75] Group Defs.' 12(b)(2) Mem., 16 [#28] (citing Decl. John J. Viscogliosi, attached to Group Defs.' 12(b)(2) Mem. as Ex. 1).

'contacts' of the manufacturer or parent corporation" for the purposes of general jurisdiction.[76] For that reason, this court cannot assert general jurisdiction over Centinel and thus cannot subject Centinel to personal jurisdiction in this court.[77]

    E.    John Viscogliosi

        1.    Specific Jurisdiction

This court has no basis on which to assert specific jurisdiction over John Viscogliosi. Plaintiff's only allegation of any Massachusetts contact that purports to relate to this action is the allegation that John, on behalf of Defendants, met with Plaintiff's representatives in Boston to discuss issues relating to these charges.[78] But Plaintiff does not allege that any of its causes of action arise out of or relate to that discussion.[79] That is, there is no allegation that the discussion was part of the wrongs alleged in the Complaint or that it inflicted any of the alleged harm.[80] This court therefore lacks jurisdiction over John.

        2.    General Jurisdiction

Nor is there any basis on which to assert general jurisdiction over John. John is a resident

---

[76] Cambridge Literary Props. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 63 n.3 (1st Cir. 2002) (citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 682–83 (1st Cir. 1992); 163 Pleasant St., 960 F.2d at 1091).

[77] Moreover, the Group Defendants have established that "Centinel's Massachusetts sales fall well short of the level that would be needed to support general jurisdiction even if they had been made directly." Group Defs.' 12(b)(2) Mem., 16 [#28] (citing Decl. John J. Viscogliosi).

[78] Supra text accompanying note 42. Specifically, the Complaint alleges that the Parties discussed "issues relating to the instant action." Compl. ¶ 13 [#1].

[79] See Cossaboon, 600 F.3d at 31.

[80] See Negron-Torres, 478 F.3d at 24.

15

of New York,[81] and Plaintiff does not allege that John works in Massachusetts. John's only alleged contact with Massachusetts is the 2008 meeting discussed above. This meeting is neither continuous nor systematic, nor does it constitute "general business activit[y]" and thus cannot form the basis of general jurisdiction.[82]

F. Anthony Viscogliosi

1. Specific Jurisdiction

This court lacks specific personal jurisdiction over Anthony Viscogliosi. The only facts in the Complaint that purport to establish specific jurisdiction is Anthony's attendance at two business meetings in Boston, but those meetings fail to establish specific jurisdiction for the same reasons that John's attendance at his meeting fails to establish specific jurisdiction.[83]

2. General Jurisdiction

This court lacks general jurisdiction over Anthony for the same reasons that it lacks

---

[81] Supra text accompanying note 35.

[82] Brown Rudnick, 311 F. Supp. 2d at 133 (quoting Daynard, 290 F.3d at 51); see Helicopteros, 466 U.S. 408; Noonan v. Winston Co., 135 F.3d 85, 92–93 (1st Cir. 1998) (holding that there was no general personal jurisdiction where a foreign company solicited business in the forum and visited the forum to establish business relationships and negotiate orders); see also Marathon Oil Co. v. Ruhrgas, 182 F.3d 291, 295 (5th Cir. 1999) (holding that the defendant's attendance at three meetings in the forum state was insufficient to confer personal jurisdiction); Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993) (holding that there was no general personal jurisdiction in Maryland for a company that employed over a dozen Maryland residents, stored property in Maryland, attended conferences in Maryland, had a contract with a Maryland entity, held regular meetings in Maryland, and had millions of dollars of annual sales in Maryland); Flick Mortg. Investors, Inc. v. Metropolis Promotion Invs. & Props. (1993) Ltd., 212 Fed. Appx. 775, 776 (11th Cir. Oct. 31, 2006) (affirming the district court's holding that a single meeting in the forum state to discuss financing was insufficient to establish personal jurisdiction).

[83] See supra text accompanying notes 78–80.

general jurisdiction over John.[84]

    G.    Paradigm Spine

        1.    Specific Jurisdiction

Finally, this court lacks specific personal jurisdiction over Paradigm Spine. Plaintiff does not allege any connection between the claims in the Complaint and Paradigm Spine's alleged contacts with Massachusetts. The allegation of the existence of Paradigm Spine's website does not support specific personal jurisdiction for the same reasons detailed above for Viscogliosi Bros. and Centinel[85] Further, to the extent that Paradigm Spine is implicated by Plaintiff's allegation that John and Marc, "on behalf of . . . Defendants,"[86] met with representatives of Plaintiff in Boston, this court cannot exert specific personal jurisdiction over Paradigm Spine. As explained,[87] that meeting is insufficient to support personal jurisdiction.

        2.    General Jurisdiction

Likewise, the Complaint fails to allege facts that show that Paradigm Spine has engaged in continuous or systematic activity that would permit this court to subject Paradigm Spine to general personal jurisdiction. Paradigm Spine's website is insufficient to support general personal jurisdiction. Similarly, Paradigm Spine's infrequent and intermittent activities in Massachusetts, including several business meetings and attendance at two conferences, is insufficient to confer

---

[84] See supra text accompanying note 83.

[85] See supra text accompanying notes 61–63, 71.

[86] Compl. ¶ 13 [#1].

[87] See supra text accompanying notes 78–80.

17

general jurisdiction.[88]

Nor can Paradigm Spine's communication with Massachusetts doctors support general personal jurisdiction. Contacting three doctors to discuss their potential interest in a future clinical study does not reach the level of "continuous and systematic activity"[89] in Massachusetts sufficient for general personal jurisdiction, and it would not be reasonable to assert jurisdiction over Paradigm Spine on that basis.[90]

Paradigm Spine concedes that it employs one part-time customer service employee in Massachusetts who works out of his home.[91] The existence of this employee does not create general personal jurisdiction over Paradigm Spine. Indeed, courts have held that even companies with more than one employee in Massachusetts are not subject to Massachusetts personal jurisdiction.[92]

Finally, the fact that a court in this district exerted personal jurisdiction over Paradigm

---

[88] See supra note 80; see also Campbell Pet Co. v. Miale, 542 F.3d 879, 883–84 (Fed. Cir. 2008) (holding that attendance at a convention in the forum, along with twelve sales in the forum and a generally accessible website, was insufficient to establish general personal jurisdiction); Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482 (9th Cir. 1993) (holding that a Swedish resident was not subject to general jurisdiction based on attendance at five conferences in the forum state over the course of four years); Tercica, Inc. v. Insmed Inc., No. C 05-5027 SBA, 2006 U.S. Dist. LEXIS 41804, *38–39 (N.D. Cal. June 9, 2006) (holding that a company's attendance at a two-day investor conference was insufficient to establish personal jurisdiction).

[89] Brown Rudnick, 311 F. Supp. 2d at 133.

[90] See, e.g., Cossaboon, 600 F.3d at 32.

[91] Mem. Law Supp. Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(2), 18 [#23] [hereinafter Paradigm Spine's 12(b)(2) Mem.].

[92] See, e.g., Harlow, 432 F.3d at 66 (citing Glater v. Eli Lilly & Co., 744 F.2d 213, 217 (1st Cir. 1984)).

18

Spine in the Trademark Litigation does not give this court the authority to exercise general personal jurisdiction over Paradigm Spine.[93] In the Trademark Litigation, as Paradigm Spine concedes, Plaintiff alleged contacts that were related to or arose from the causes of action at issue in that case, and the issues in the Trademark Litigation are distinct from the issues here.[94] The fact that Paradigm Spine has previously been a party to a suit in Massachusetts does not automatically confer jurisdiction over Paradigm Spine in this action.[95]

For these reasons, this court lacks personal jurisdiction over Paradigm Spine and thus over all Defendants.

### H. Remaining 12(b)(6) Motions

Because this court dismisses this action in its entirety for lack of personal jurisdiction over any of Defendants, this court need not reach Defendants' motions to dismiss for failure to state a claim upon which relief may be granted. Those motions are therefore moot.

## IV. Conclusion

For the foregoing reasons, the Group Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) [#27] is ALLOWED and Paradigm Spine's Amended Motion to Dismiss

---

[93] See supra text accompanying notes 9–11.

[94] Paradigm Spine's 12(b)(2) Mem., 19 [#23]; see Paradigm BioDevices, No. 07-10127-DPW.

[95] Cf. Martel v. Stafford, 992 F.2d 1244, 1248 (1st Cir. 1993) (holding that the defendant had not consented to personal jurisdiction where the defendant had allegedly consented to personal jurisdiction in a prior suit). Judge Woodlock denied without comment Paradigm Spine's motion to dismiss for lack of personal jurisdiction. That ruling can be read consistently with today's ruling because the court was likely exerting specific personal jurisdiction over Paradigm Spine. Specific jurisdiction in a different action in Massachusetts does not automatically provide specific jurisdiction in this action.

Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) [#32] is ALLOWED.  Accordingly, the Group Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#29] is MOOT and Paradigm Spine's Amended Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [#33] is MOOT.

AN ORDER HAS ISSUED.

   /s/ Joseph L. Tauro
United States District Judge